## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| LATRISSE POMMELLS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 18-5143 |
| | : | |
| STATE FARM INSURANCE, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                 **JUNE 3, 2019**

Plaintiff Latrisse Pommells ("Pommells") was in a motor vehicle accident in August

2014.  After bringing suit against the tortfeasor and settling for $23,000, she turned to her

automobile insurance carrier, Defendant State Farm Insurance ("State Farm"), for underinsured

motorist benefits.  State Farm denied her claim.  She now brings this action against State Farm,

asserting claims of breach of contract, Pennsylvania statutory bad faith, and common law bad

faith.

Presently before the Court is State Farm's Motion to Dismiss.  Pommells has filed a

Response in Opposition, and State Farm has filed a Reply Brief.  For the reasons noted below,

State Farm's Motion is granted.

## I.       BACKGROUND[1]

On August 20, 2014, Pommells was injured in an automobile accident in Philadelphia,

Pennsylvania.  (Compl. ¶ 15.)  She brought a third-party tort claim against the tortfeasor, which

---

[1] We take the facts alleged in the Complaint as true, as we must when deciding a motion under Federal Rule of Civil
Procedure 12(b)(6).  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citation omitted).

ultimately settled for $23,000 out of the available $25,000 in coverage from the tortfeasor's

insurance carrier. (*Id.* ¶ 21.)

Pommells was a named insured of a State Farm automobile insurance policy at the time

of the accident.[2] (*Id.* ¶ 9.) On approximately July 27, 2015, she advised State Farm that she was

making a claim under the policy for underinsured motorist ("UIM") benefits. (*Id.* ¶ 37.) State

Farm acknowledged her claim for UIM benefits, (*id.* ¶ 38), but later denied it, (*see id.* ¶ 49).

On November 29, 2018, Pommells filed suit in this Court against State Farm, asserting

claims of breach of contract (Count I), Pennsylvania statutory bad faith under 42 Pa. Cons. Stat.

§ 8371 (Count II), and common law bad faith (Count III).[3] State Farm filed its Motion to

Dismiss on January 23, 2019. In particular, State Farm seeks to dismiss (1) the claim for

punitive damages and any damages exceeding $25,000 in Pommells' breach of contract claim;

(2) all allegations regarding a breach of fiduciary duty because no such duty exists in the UIM

context under Pennsylvania law; (3) the statutory bad faith claim for insufficient pleading; and

(4) the common law bad faith claim based on Pennsylvania law not recognizing such a cause of

action. Pommells filed a Response in Opposition on February 19, 2019, and State Farm filed a

Reply Brief on February 25, 2019.

## II.     LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

---

[2] The policy number is 1430514C1238F. (*Id.* ¶ 9.)

[3] Pommells does not title Count I as "breach of contract," but rather labels it the "UIM Claim." State Farm
characterizes this claim as breach of contract, and Pommells does not dispute this label. Indeed, the count operates
functionally as one of breach of contract, as Pommells pleads that "this litigation was commenced to seek recovery
of underinsured motorist benefits *under the State Farm policy of insurance*." (*Id.* ¶ 39) (emphasis added).
Therefore, for ease of use, we will refer to Count I as breach of contract.

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)) (internal quotation marks omitted). However, courts need not "accept mere[] conclusory factual allegations or legal assertions." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 678-79). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Finally, we may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Davis*, 824 F.3d at 341 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)) (internal quotation marks omitted).

## III. DISCUSSION[4]

### A. Breach of Contract Damages Exceeding $25,000 and Punitive Damages

We begin first with State Farm's request for dismissal of Pommell's breach of contract damages exceeding $25,000 and punitive damages in Count I of the Complaint. As to damages above $25,000, State Farm argues that dismissal is warranted because the documents attached to Pommells' Complaint show she is entitled to a maximum of $25,000 in UIM benefits. (*See* Def.'s Mem. Law Supp. Mot. to Dismiss 3-4; *see also* Compl., Ex. A ("Declarations Page") at

---

[4] We have diversity jurisdiction under 28 U.S.C. § 1332(a), as Pommells pleads she is a citizen of Pennsylvania and State Farm is a citizen of Illinois. (*See* Compl. ¶¶ 1-2.) State Farm does not contest Pommell's allegation regarding its citizenship. Because this action is based on diversity of citizenship, we apply Pennsylvania state law. *See Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)) (stating that courts sitting in diversity apply substantive state law).

1.) Regarding punitive damages, State Farm argues that the policy expressly excludes recovery

for them. (*See* Def.'s Mem. Law Supp. Mot. to Dismiss 4-5, Ex. A ("Policy Booklet – Form

9838A") at 26.[5])

### 1. *Damages Exceeding $25,000*

Under Pennsylvania law, "[t]he limits of coverages available [for uninsured and UIM

benefits] for an insured shall be the sum of the limits for each motor vehicle as to which the

injured person is an insured." 75 Pa. Cons. Stat. § 1738(a). This concept, known as "stacking,"

is "the ability to add the coverages available from different vehicles and/or different polices to

provide a greater amount of coverage available under any one vehicle or policy." *Sackett v.

Nationwide Mut. Ins. Co.*, 4 A.3d 637, 639 (Pa. Super. Ct. 2010) (quoting *McGovern v. Erie Ins.

Grp.*, 796 A.2d 343, 344 (Pa. Super. Ct. 2002)). A named insured, however, "may waive

coverage providing stacking of uninsured or underinsured coverages in which case the limits of

coverage available under the policy for an insured shall be the stated limits for the motor vehicle

as to which the injured person is an insured." 75 Pa. Cons. Stat. § 1738(b).

Pommells alleges that State Farm breached its contract of insurance when it denied her

claim for UIM benefits.[6] The *ad damnum* clause of Count I concludes by demanding judgment

"in an amount in excess of $75,000 plus delay damages, punitive damages, interest, costs, and

damages as permitted by law." In support of its argument that Pommells is entitled to a

maximum of $25,000 for her breach of contract claim, State Farm points to the Declarations

---

[5] Pommells did not attach Policy Booklet – Form 9838A to her Complaint. However, her Declarations Page, which she did attach, provides that the policy consists of, *inter alia*, Policy Booklet – Form 9838A. (*See* Declarations Page at 2.) Accordingly, we will consider the document at this stage because Pommells' claims are based on it, and she does not dispute its authenticity. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (stating that when deciding a motion to dismiss, "courts may consider an undisputedly authentic document that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

[6] State Farm does not dispute that Pommells adequately pleads her breach of contract claim. (*See* Def.'s Mem. Law Supp. Mot. to Dismiss 1.)

Page and the "Pennsylvania Stacked Underinsured Coverage Limits (Acknowledgment of

Coverage Rejection)" that Pommells signed on July 16, 2012.[7]  The Declarations Page shows

three vehicles insured under the policy: (1) a 2013 Nissan Altima; (2) a 2007 Nissan Sentra; and

(3) a 2010 Dodge Challenger.  (*See* Declarations Page at 1.)  Each vehicle is listed to include

UIM coverage in the amount of $25,000 per person.  (*See id.*)  The "Pennsylvania Stacked

Underinsured Coverage Limits (Acknowledgment of Coverage Rejection)" states that

> [b]y signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy.  Instead the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy.  I knowingly and voluntarily reject the stacked limits of coverage.  I understand that my premiums will be reduced if I reject this coverage.

As a result of Pommells' July 2012 rejection of stacking, State Farm claims the

maximum amount of recovery in the breach of contract claim is $25,000.  Pommells responds by

asserting that she added a third vehicle to her policy, the 2013 Nissan Altima, subsequent to her

July 2012 stacking waiver.  (*See* Pl.'s Mem. Law Opp'n Def.'s Mot. to Dismiss 11.[8])  She claims

that State Farm never obtained a stacking waiver after she added the third vehicle to her policy,

(*id.*), but fails to explain to the Court, by way of case law or statute, how this would make a legal

difference in this case.  Nevertheless, State Farm states in its Reply Brief that if Pommells did

"add" a third vehicle to her policy after her July 2012 waiver, it would have been required to

obtain a new waiver.  (*See* Def.'s Reply Br. 2 n.1.)  In other words, if Pommells truly "added" a

---

[7] The "Pennsylvania Stacked Underinsured Coverage Limits (Acknowledgment of Coverage Rejection)" is attached to Pommells' Complaint.  (*See* Compl., Ex. A ("Pennsylvania Stacked Underinsured Coverage Limits (Acknowledgment of Coverage Rejection") at 27).)  Our citation here is to the ECF pagination.

[8] Pommells' Memorandum of Law lacks page numbers.  Therefore, we will utilize the ECF pagination when citing to her brief.

third vehicle after she executed her July 2012 waiver, she would be entitled to stack the $25,000 in coverage for each of her three vehicles for a maximum potential UIM benefit of $75,000. The issue, State Farm contends, is that Pommells did not "add" a third vehicle to her policy after her stacking waiver, but rather "substituted" the 2013 Nissan Altima for a Nissan Murano that was previously on the policy. State Farm states there is no case that requires an insurer to secure a new stacking waiver when one vehicle replaces another on the same policy. (*Id.*)

We cannot even consider Pommells' argument, however, because as State Farm points out, none of the facts related to Pommells' "addition" of the 2013 Nissan Altima to her policy are alleged in the Complaint. When evaluating the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), the Court can consider only the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997) (noting district courts cannot go beyond the facts alleged in the complaint and supporting documents); *Thomas v. Phila. Hous. Auth.*, No. 11-224, 2011 WL 3862245, at *2 n.15 (E.D. Pa. Aug. 30, 2011) (stating the court "cannot consider the facts alleged in [the plaintiff's] motion papers in evaluating the sufficiency of her Complaint"); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 474 n.21 (D.N.J. 1998) (stating the court cannot consider facts asserted in a brief that are outside the pleadings when ruling on a Rule 12(b)(6) motion). Because Pommells does not assert any facts in her Complaint regarding changes to her policy after July 2012, we cannot consider them when deciding State Farm's Motion to Dismiss.

The Complaint and attached exhibits, as they now stand, indicate that Pommells insured three vehicles under the policy for $25,000 in UIM coverage for each vehicle. The executed "Pennsylvania Stacked Underinsured Coverage Limits (Acknowledgment of Coverage

Rejection)" shows that Pommells rejected stacking, meaning that the UIM coverage for each vehicle cannot be aggregated, but rather is "reduced to the limits stated in the policy." Because no facts relating to Pommells obtaining coverage for her 2013 Nissan Altima appear in the Complaint, there is no basis for the Court to conclude she is entitled to UIM benefits above $25,000. Accordingly, damages exceeding $25,000 in Pommells' breach of contract claim (Count I) are dismissed. However, we will give Pommells leave to amend her Complaint to include allegations that state a claim for damages above $25,000.

### 2. *Punitive Damages*

State Farm also moves to dismiss the punitive damages in Count I because the policy expressly excludes recovery for them. Indeed, Policy Booklet – Form 9838A provides that "[t]here is no coverage . . . for punitive or exemplary damages." (Policy Booklet – Form 9838A at 26, ¶ 5.) Pommells provides no response in opposition to State Farm's argument. Accordingly, punitive damages in Count I of the Complaint are dismissed with prejudice. *See Burlington*, 114 F.3d at 1434 (listing futility as a reason for denying leave to amend).

### B. Allegations Related to a Breach of Fiduciary Duty

State Farm next moves to dismiss all allegations in Pommells' Complaint regarding a breach of fiduciary duty, arguing that no such duty exists under Pennsylvania law in the context of a UIM claim. (*See* Def.'s Mem. Law Supp. Mot. to Dismiss 5-6.) In *Tubman v. USAA Cas. Ins. Co.*, the court outlined the difference between third-party claims and UIM claims, noting that in the former situation, "a fiduciary duty arises when an insurer asserts a right under the policy to handle claims against the insured." 943 F. Supp. 2d 525, 528 (E.D. Pa. 2013) (citing *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 227-28 (3d Cir. 2000)). UIM claims, the court explained, "do not fit this mold" because the Pennsylvania Superior Court considers them to be a

hybrid of first and third-party claims. *Id.* (citing *Zappile v. Amex Assurance Co.*, 928 A.2d 251, 256 (Pa. Super. Ct. 2007)). As a result, "federal district courts have held that an insurer does not assume a fiduciary duty toward an insured for UIM claims." *Id.* (citations omitted); *see also Meyers v. Protective Ins. Co.*, No. 16-1821, 2017 WL 386644, at *5 (M.D. Pa. Jan. 27, 2017) ("It is well-established, however, that there is no fiduciary duty owed to an insured in the context of an underinsured/uninsured motorist benefits."); *Bare v. State Auto Grp.*, No. 13-2812, 2013 WL 3878606, at *1 (E.D. Pa. July 26, 2013) (citing *Tubman*, 943 F. Supp. 2d at 528) ("[A]n insurer does not assume a fiduciary duty toward an insured for UIM claims.").

Pommells cites numerous cases in support of her argument that there is a fiduciary relationship between an insurer and its insured under Pennsylvania law. (*See* Pl.'s Mem. Law Opp'n Def.'s Mot. to Dismiss 9) (citing *Bell v. Commercial Ins. Co. of Newark, N.J.*, 280 F.2d 514 (3d Cir. 1960); *Clark v. Interstate Nat'l Corp.*, 486 F. Supp. 145 (E.D. Pa. 1980); *Ashbrook v. Kowalick*, 332 F. Supp. 78 (E.D. Pa. 1971); *Birth Ctr. v. St. Paul Cos.*, 787 A.2d 376 (Pa. 2001); *Gray v. Nationwide Mut. Ins. Co.*, 223 A.2d 8 (Pa. 1966); *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320 (Pa. 1963); *Cowden v. Aetna Cas. & Sur. Co.*, 134 A.2d 223 (Pa. 1957); *Shearer v. Reed*, 428 A.2d 635 (Pa. Super. Ct. 1981)). However, every one of these cases is in the context of a third-party claim. As we explained above, courts have noted a distinction between third-party claims and UIM claims, the latter situation not giving rise to a fiduciary duty between the insurer and an insured. *See Tubman*, 943 F. Supp. 2d at 528. Therefore, the cases Pommells cites have no applicability here.

Pommells does not bring a standalone breach of fiduciary count, but rather references such a duty throughout the Complaint. The court encountered a similar situation in *Meyers*. *See Meyers*, 2017 WL 386644, at *5. In that case, the defendant argued that all references to a

fiduciary duty should be stricken from the Complaint, and the court agreed. *Id.* Here, State

Farm requests only that "all references to and claims of breach of fiduciary duty . . . be dismissed

from the complaint." (Def.'s Mem. Law Supp. Mot. to Dismiss 6.) We will not strike these

allegations from the Complaint because State Farm does not move for such an action. However,

to the extent Pommells attempts a theory of relief for breach of fiduciary duty in any of her

claims, it is dismissed with prejudice. *See Burlington*, 114 F.3d at 1434 (listing futility as a

reason for denying leave to amend).

### C. Statutory Bad Faith

State Farm also moves to dismiss Pommells' statutory bad faith claim (Count II) based on

insufficient pleading. (Def.'s Mem. Law Supp. Mot. to Dismiss 6-8.) The Superior Court of

Pennsylvania has defined "bad faith" as "any frivolous or unfounded refusal to pay proceeds of a

policy." *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994).

"[T]o prevail in a bad faith insurance claim pursuant to Section 8371, a plaintiff must

demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable

basis for denying benefits under the policy and (2) that the insurer knew or recklessly

disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Wash. Nat'l Ins.

Co.*, 170 A.3d 364, 377 (Pa. 2017). Importantly, "[a] plaintiff must plead specific facts as

evidence of bad faith and cannot rely on conclusory statements." *McDonough v. State Farm

Fire & Cas. Co.*, 365 F. Supp. 3d 552, 557 (E.D. Pa. 2019) (alteration in original) (quoting *Toner

v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017)); *see also Kiessling v. State Farm

Mut. Auto. Ins. Co.*, No. 18-4281, 2019 WL 634639, at *3 (E.D. Pa. Feb. 14, 2019) (stating bad

faith claims are "fact-specific"). "A plaintiff cannot merely say that an insurer acted unfairly,

but instead must describe with specificity what was unfair." *Id.* (quoting *Toner*, 262 F. Supp. 3d at 208).

State Farm argues that Pommells' statutory bad faith claim should be dismissed because there are no factual allegations of bad faith in the Complaint. In response, Pommells quotes multiple paragraphs from her Complaint that she argues are "specific allegations" of bad faith. (*See* Pl.'s Mem. Law Opp'n Def.'s Mot. to Dismiss 10-11.) Her Complaint alleges that State Farm committed bad faith by acting with a dishonest purpose and knowingly breaching a duty because of its self-interest, (Compl. ¶ 48); denying coverage, (*id.* ¶¶ 50(a), 50(d)); collecting premiums and then denying coverage, (*id.* ¶ 50(b)); and "[c]onspiring to create a defense for its own self-interest which its [sic] knows has no factual basis," (*id.* ¶ 50(e)). She also emphasizes the following two allegations as evidence of bad faith: (1) "Defendant's unwillingness and refusal to acknowledge underinsured motorist coverage and to acknowledge the $75,000.00 policy limits"; and (2) "State Farm attempting to defraud the insured into believing that there were 'lesser' underinsured motorist limits with State Farm knowing that it did not have a legitimate basis for same." (*Id.* ¶¶ 47, 50(c).)

The two emphasized allegations appear to relate to Pommells' argument regarding her "addition" of the 2013 Nissan Altima to the policy, such that she can stack the coverages for all three of her vehicles for a maximum UIM benefit of $75,000. However, as we indicated above, the Complaint is devoid of any factual allegations surrounding the 2013 Nissan Altima and how it is covered under the policy. Without more, her Complaint merely contains conclusory statements of bad faith, and it is clear that such allegations are insufficient to state a claim under Pennsylvania's bad faith statute. *See Kiessling*, 2019 WL 634639, at *4 (dismissing bad faith claim because there were no facts about "Plaintiffs' insurance claims and Defendant's

subsequent investigations, negotiations, and offer(s) or communications"); *McDonough*, 365 F.

Supp. 3d at 557 (stating that insurance company "unreasonably withh[olding] the payment of

underinsured motorist benefits under the policy, fail[ing] to make a reasonable offer of

settlement, present[ing] a low offer of settlement, fail[ing] to engage in good faith negotiations,

present[ing] an offer of less than the amount due . . . and fail[ing] to perform an adequate

investigation of the value of [the plaintiff's] claim for underinsured motorist benefits" was

insufficient to state a claim of bad faith); *see also Kosmalski v. Progressive Preferred Ins.*, No.

17-5726, 2018 WL 2045827, at *1-2 (E.D. Pa. May 2, 2018); *Jones v. Allstate Ins. Co.*, No. 17-

648, 2017 WL 2633472, at *2-3 (E.D. Pa. June 19, 2017). Accordingly, Pommells' statutory bad

faith claim is dismissed without prejudice.

D.    **Common Law Bad Faith**

Lastly, State Farm moves to dismiss Pommells' common law bad faith claim (Count III)

on the basis that such a cause of action is not recognized under Pennsylvania law. (*See* Def.'s

Mem. Law Supp. Mot. to Dismiss 8-10.) Pommells fails to provide any response to State Farm's

argument. Nevertheless, we agree with State Farm that the common law bad faith claim fails and

will dismiss it with prejudice.

"Under Pennsylvania law, bad faith by an insurance company can give rise to two

separate causes of action: a breach of contract action for violation of an insurance contract's

implied duty of good faith, and a statutory action under the terms of Pennsylvania's bad faith

statute, 42 Pa. Cons. Stat. § 8371." *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 496-

97 (3d Cir. 2015). With respect to a breach of contract action, Pennsylvania courts have held

that "the common law duty of good faith and fair dealing is implied in every contract." *Tubman*,

943 F. Supp. 2d at 529 (citing *Excelsior Ins. Co. v. Incredibly Edible Delites*, No. 09-3198, 2009

WL 5092613, at *3 (E.D. Pa. Dec. 17, 2009)).  Operating from that premise, courts have

consistently concluded that a plaintiff cannot bring a freestanding common law bad faith claim

and a separate breach of contract claim, as the former is subsumed within the latter.  *See*

*McDonough*, 365 F. Supp. 3d at 558-59; *Blackwell v. Allstate Ins. Co.*, No. 14-878, 2014 WL

4375592, at *4 (E.D. Pa. Sept. 3, 2014); *Zeglen v. Nw. Mut. Life Ins. Co.*, No. 14-173, 2014 WL

4215531, at *3 (M.D. Pa. Aug. 25, 2014) (citation omitted); *Tubman*, 943 F. Supp. 2d at 529;

*Fingles v. Cont'l Cas. Co.*, No. 08-5943, 2010 WL 1718289, at *3-4 (E.D. Pa. Apr. 28, 2010).

In this case, Pommells brings a breach of contract claim in Count I of the Complaint and

a violation of Pennsylvania's bad faith statute in Count II.  Her common law bad faith claim in

Count III is nothing more than an alleged breach of the covenant of good faith and fair dealing.

(Compl. ¶¶ 54, 59) ("The said policy of insurance between Plaintiff and State Farm hereinabove

alleged constituted a contract binding on . . . State Farm. . . ." and "in the performance of the said

contract, owed to Plaintiff a fiduciary duty to act in good faith.").  However, the law is clear that

"a separate claim for common law bad faith does not exist independent of a breach of contract

action, as good faith is a presumed requirement of every contract."  *Blackwell*, 2014 WL

4375592, at *4 (citing *Tubman*, 943 F. Supp. 2d at 529).  Accordingly, Pommells' common law

bad faith claim is subsumed within her breach of contract claim, and the former is dismissed with

prejudice.[9]  *See Burlington*, 114 F.3d at 1434 (listing futility as a reason for denying leave to

amend).

---

[9] The Supreme Court of Pennsylvania in *D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co.*, 431 A.2d 966 (Pa. 1981) held that "Pennsylvania does not recognize a common law tort action for bad faith."  *Fingles*, 2010 WL 1718289, at *4 n.4 (citing *Emp'rs Mut. Cas. Co. v. Loos*, 476 F. Supp. 2d 478, 489 n.8 (W.D. Pa. 2007)).  In response to the *D'Ambrosio* decision, the Pennsylvania General Assembly enacted § 8371.  *See Rancosky*, 170 A.3d at 166. Therefore, as a matter of law, Pommells' common law bad faith claim cannot sound in tort because § 8371 "provides plaintiff's exclusive remedy in tort."  *Fingles*, 2010 WL 1718289, at *4 n.4; *see also Johnson v. State Farm Life Ins. Co.*, 695 F. Supp. 2d 201, 211 (W.D. Pa. 2010) (citing *Loos*, 476 F. Supp. 2d at 489 n.8).

**IV.     CONCLUSION**

For the reasons stated above, State Farm's Motion to Dismiss is granted.  Specifically, damages exceeding $25,000 in Pommells' breach of contract claim (Count I) are dismissed without prejudice, whereas punitive damages in Count I are dismissed with prejudice; all allegations regarding a breach of fiduciary duty are dismissed with prejudice; the statutory bad faith claim (Count II) is dismissed without prejudice; and the common law bad faith claim (Count III) is dismissed with prejudice.  Pommells will be given fourteen days to cure the deficiencies in her Complaint by filing an Amended Complaint.

An appropriate Order follows.